Kulpa v Jackson (2004 NY Slip Op 24035)

Kulpa v Jackson

2004 NY Slip Op 24035 [3 Misc 3d 227]

January 26, 2004

Supreme Court, Oneida County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Tuesday, June 22, 2004

[*1]
Carol C. Kulpa et al., Plaintiffs,
v
Rebecca K. Jackson et al., Defendants.

Carol C. Kulpa et al., Plaintiffs, 
 v Craig D. Fell, Defendant.
Supreme Court, Oneida County, January 26, 2004

APPEARANCES OF COUNSEL

Mackenzie Hughes, LLP (Richard P. James of counsel), for Joanne P. Ashforth, defendant. Smith, Sovik, Kendrick, Schwarzer & Sugnet, P.C. (Jennifer L. Ploetz of counsel), for Rebecca K. Jackson, defendant. O'Shea, McDonald, Panzone & Stevens, LLP (Timothy Brian O'Shea of counsel), for Craig D. Fell, defendant. Brindisi, Murad & Brindisi-Pearlman, LLP (Stephanie A. Palmer of counsel), for plaintiffs.

{**3 Misc 3d at 228} OPINION OF THE COURT

Robert F. Julian, J.
relief requested: Defendant Ashforth moves for summary judgment dismissing the complaint. Defendant Fell cross-moves to dismiss the complaint. Plaintiffs cross-move for an extension of time to serve process upon defendant Fell and/or to consolidate the actions and to strike affirmative defenses related to service.
holding: The stipulation of discontinuance in the first action is not res judicata barring the second. Defendant Fell was successfully served with process under the Hague Convention. Plaintiffs are granted relief in the alternative in the form of additional time to perfect service of process, if so inclined.
discussion: The plaintiff Carol Kulpa sues for damages from injuries sustained in a motor vehicle accident on July 30, 2001. Her {**3 Misc 3d at 229}husband, Constant Kulpa, has a derivative claim. Defendant Fell was the driver of a vehicle owned by the defendant Ashforth, and at all relevant times is a citizen and domiciliary of the UK (England). The plaintiff was a passenger in the defendant owner/driver Jackson's vehicle. The two vehicles collided, allegedly due to the negligence of both drivers, allegedly causing the injuries complained of.
[*2]
The plaintiff commenced an action against the defendants by filing a summons and complaint, index No. CA2002-002775, on December 3, 2002. Defendants Jackson and Ashforth were served personally in New York State. All parties acknowledge that the plaintiffs were unable to serve the defendant Fell pursuant to the Hague Convention,[FN*]

who was resident in England at the time of the service attempt. A motion was brought to dismiss this action against Fell returnable on May 27, 2003. After a conference between counsel, court was advised that the plaintiffs were going to discontinue the action against defendant Fell, without prejudice, obtain a new index number and proceed to obtain proper service. On July 14, 2003, the plaintiffs' attorney sent a stipulation of discontinuance to Fell's attorney stating in pertinent part: "[T]he action is hereby discontinued against Craig D. Fell, without prejudice, on the merits, and with [plaintiffs'] right to renew the action . . . ." Fell's counsel filed the stipulation in the county clerk's office. On August 19, 2003, after filing the stipulation, he wrote to the other counsel asking if they objected to the discontinuance of the original claim against Fell. On September 9, 2003, the attorney for the defendant Ashforth advised he will consent only if the discontinuance is on the merits, opines that it is, but acknowledges it is vague and ambiguous.
Thereafter plaintiffs served Fell on August 7, 2003 with the summons and complaint in the second action. There was an entry on the process server's papers, later corrected, that indicated the wrong numbers for the papers. On November 3, 2003 Fell moved the court for dismissal of the second complaint, and for a determination as to whether or not the stipulation of discontinuance is res judicata, barring any further action. Other conditional relief is also requested that is rendered irrelevant by this decision.
The defendant Ashforth moved on November 26, 2003 for summary judgment dismissing the complaint, based on the stipulation{**3 Misc 3d at 230} of discontinuance which his counsel never signed and expressly repudiated in the letter of September 9, 2003. The defendant Jackson opposes said motion.
Disposition of the various motions and cross motions herein requires answers to these questions:
1) Does the stipulation of discontinuance which contains the words "the action is hereby discontinued against Craig D. Fell, without prejudice, on the merits, and with [plaintiffs'] right to the [sic] renew the action . . ." constitute a permanent dispositive discontinuance of the case?
2) Does the service of a summons and complaint with the index number of a prior action, discontinued due to a failure of service, constitute good service in a subsequent action arising out of the same facts, in satisfaction of the CPLR and the Hague Convention?
3) Is service of "judicial documents" pursuant to the Hague Convention completed when the certificate of service is filed without listing the summary of documents served and without describing the physical appearance of the person served?
4) Is the plaintiff entitled to an extension of time to serve process should she choose to again attempt to perfect service upon Fell and obviate objections, given that the statute of limitations has not run?

The Stipulation

The stipulation of discontinuance signed by counsel for the plaintiffs and defendant Fell is not on the merits and the discontinuance is without prejudice. Not one attorney privy to [*3]the discussion contends that the intention of the plaintiffs was to discontinue with prejudice. Indeed it is without dispute that the plaintiffs' intent was to discontinue without prejudice so that a new lawsuit with a new index number could be commenced and served on Fell and thereafter consolidated with the suit otherwise commenced against the other defendants. The stipulation of discontinuance states that the plaintiffs retain "the right to renew the action." It is obvious that there is a misplaced comma coupled with awkward phraseology (it shouldn't have recited "on the merits" since the dismissal was patently not on the merits, but on a procedural matter), but even so there is no expression of any intent to give Fell a dismissal on the merits, with prejudice to further action. If magic words are required to effect a dismissal on the merits, with prejudiceand a leading authority on civil practice suggests they{**3 Misc 3d at 231} arethis stipulation incants the recommended magic verbiage to avoid the res judicata effect of a dismissal on the merits. Professor Siegel writes (NY Prac § 298, at 460 [3d ed 1999]):
"CPLR 3217 (c) governs the res judicata effect of a discontinuance. The general rule is that unless the discontinuance itself states otherwise, whether in the notice, stipulation, or order, it is not res judicata so as to bar a new action.
"An order of discontinuance can dictate what its res judicata effect is to be. The court can specify, for example, that no later action may be brought on the claim, a result that invokes the res judicata doctrine. So does the shorthand phrase 'with prejudice'. Whatever phrase is used should make clear the court's intent."
Applying the foregoing recommended construction to this case, the stipulation (1) states it is without prejudice; (2) is the result of discussion between counsel wherein it is agreed that the discontinuance is without prejudice; and (3) explicitly contemplates another action being brought on the claim.
Therefore the stipulation of discontinuance is without prejudice, was not on the merits, and thus there is no res judicata bar to a new action.
It should be noted that this stipulation was procedurally defective in that it did not comply with the requirement of CPLR 3217 that a stipulation of discontinuance be signed by attorneys for all parties; this is especially significant when one party expressly disavowed agreement if not "on the merits," and did not sign it. It may well, therefore, be unenforceable in any event. The court chose to address the matter on the merits because no party raised the prima facie invalidity of the stipulation and the defect may have been waived.

The Hague Convention

Defendant Fell is a UK resident and was served there. The UK and the United States are signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (20 UST 361, TIAS No. 6638 [1969]). The Hague Convention is a duly ratified treaty of the United States and is thus the supreme law of the land. The Convention governs the validity of service of process on Fell herein. (Volkswagenwerk AG. v Schlunk, 486 US 694 [1988].)
Regarding the summons and complaint served upon Fell on August 7, 2003, the court finds that if the proof established that there {**3 Misc 3d at 232}was an incorrect index number on the served [*4]complaint it would be a fatal defect in service in the second action. As of July 1, 1992, the filing method commencing an action became the law in New York. CPLR 306-b allows 120 days after the filing to effect service and the affidavit of service is to be filed. Thus, the scheme is payment of fee, a filing in which an index number is assigned to the summons and complaint, and proof of service of that summons and complaint to be filed under the same index number.
The plaintiff has demonstrated prima facie, by affidavit, that the summons and complaint served contained the proper index number. Relying on the fact that the index number of the first action was placed on the certificate by the process server, defendant Fell argues that there was failure of compliance with the Hague Convention. The defendant declines as a tactical choice, however, to advise the court whether or not any service occurred in this case, much less what the index number was on the summons and complaint, if served. When the court asked defense counsel what documents the defendant had received, the response was that he was unaware and that it is not the defendant's burden to disprove service, but plaintiffs' burden to prove it, and that the claim of service herein was facially defective. For reasons set forth below, the court finds that as a consequence of this position, the defendant has failed to refute the plaintiff's facially acceptable assertion that the complaint served had the proper index number and the court therefore resolves this issue in favor of the plaintiffs.
The defendant Fell also contends that service in the second action is not in conformity with the Hague Convention for various other reasons. He argues that the Hague Convention requires the service of a summary of the documents to be served with the summons and complaint and that the certificate (the proof of service) presented by the plaintiff does not include the summary as a listed document served. However, the American agent for service maintains that this summary is voluntarily and routinely not mentioned in the proof of service. There is no requirement in article 5 or 6 of the Hague Convention that the same be listed on the certificate as a document served. Moreover, the Senior Master of the Queen's Bench Division of the Supreme Court of England and Wales in a document containing their official stamp states that Mr. Fell was served in compliance with routine practice and that a " 'Summary of the Document to be Served' was included with the other documents."{**3 Misc 3d at 233}
Fell further argues that the forms used for request for service, certificate and the summary are not consistent with the forms set forth in articles 5 and 6 of the Hague Convention.
The defendant Fell's objections regarding the alleged noncompliance of the documents sent to the plaintiff by central authority of the UK (in this case, the Senior Master of the Queens Bench Division of the Supreme Court of England) are unpersuasive. Not only does the proper UK authority indicate that the summary was included in the documents, and thus served, but there is no specific requirement set forth in the Hague Convention which requires a specific mention of the summary document as having been served. Article 6 simply provides that the central authority of the state addressed "shall complete a certificate in the form of the model annexed to the present Convention." Article 6 further states that "[t]he certificate shall state that the document has been served and the date of service and the person to whom the document was delivered." The form certificate attached to defendant's papers only requires proof that the document has been served, without any specificity. Moreover, the summary of the document to be served is a separate piece of paper, and a creature of the Convention itself rather than "a document to be served," although it is to be given with the documents. There is no requirement that the certificate mention or list the summary of the documents to be served and thus the assurance by the Senior Master of the Queens Bench Division of the Supreme Court of England that the summary, which was provided by the American process server, was served is sufficient.
Hague Convention article 1 (20 UST 361, TIAS No. 6638 [1969]) states: "The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." The "document[s]" referred to in the treaty are those that have a need to be transmitted abroad for service. See Schlunk (supra), which emphasizes that the documents to be served are those required by the law of the forum state for the purpose of obtaining jurisdiction and providing adequate notice. The summary is not a document required to [*5]be transmitted abroad for service; it is simply a treaty created document relating to those which are being transmitted for service. Accordingly, the "document[s]" referred to in article 6 would not include the summary, since it is not something transmitted "for service" and does not even exist under the law of the forum state, which, per Schlunk (supra), defines the documents requiring transmission.{**3 Misc 3d at 234}
Since the certificate in this case sets forth the documents required to be listed, the validity of service cannot be challenged simply on the question of scrivening raised herein. Rather, a showing would be required that the summary was in fact not delivered. The plaintiff having provided prima facie proof of proper service of the documents and the summary, the burden of demonstrating improper service shifts to the defendant, who does not maintain that the summary was not served but only argues that the summary was not listed in the affidavit of service (certificate). Given the defendant's declination as a tactical choice at oral argument or in his papers to provide any detail regarding what documents were actually received and whether the summary was served with the documents, the defendant fails to meet its burden of showing noncompliance.
The same assessment is applicable to Fell's complaint about the absence of a description of Fell in the certificate. Article 6 of the Hague Convention requires that "[t]he certificate shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered." The form attached recites the questions "[t]he documents referred to in the request have been delivered to: (identity and description of person)." The certificate in this case lists "Craig D. Fell" as having been served, but does not give a physical description of him. If the defendant asserted that this service had not occurred, the description would be relevant. Fell's counsel as a tactical choice declined to advise the court whether or not delivery was made or what documents were delivered. Stating the identity of the person served as "Craig D. Fell" in the certificate complies with the requirements of article 6 and that detail is sufficient to shift the burden of going forward with proof to the defendant. Comparable to the issue of whether or not there was a correct index number on the documents served, if the defendant provided proof (in affidavit form) that service did not occur, that would satisfy his burden of coming forward and the burden would again shift to the plaintiff to prove service. The likely remedy would be a traverse hearing. The defendant's disinclination to lay bare its contentions and proof regarding these issues results in a failure to meet its prima facie burden of coming forward so as to even force a traverse hearing or some other fact-finding mechanism: "where the process server is living and available to testify, defendant's sworn denial of service renders the affidavit of service nonconclusive and shifts the burden {**3 Misc 3d at 235}of proof to plaintiff to substantiate the allegation of personal service." (Anton v Amato, 101 AD2d 819, 820 [2d Dept 1984]; De Zego v Donald F. Bruhn, M.D., P.C., 99 AD2d 823 [2d Dept 1984]; Old Colony Furniture Co. v Fiegoli, 97 AD2d 790 [2d Dept 1983]; Olmo v Olmo, 102 AD2d 864 [2d Dept 1984].)
Therefore, the certificate and the summary of the documents to be served are consistent with the Hague Convention and are those documents utilized by the sovereign who determined the means and methods of service, pursuant to the treaty. Service has been accomplished and is valid and adequate under the Hague Convention.

Extension of Time to Serve

Finally, the plaintiff moves in the alternative pursuant to CPLR 306-b for an extension of the time to serve the summons and complaint. The statute provides for service within 120 days of filing, but allows the court to extend the time "upon good cause shown or in the interest of [*6]justice."
The Court of Appeals discussed extensions of time under CPLR 306-b at length in Leader v Maroney, Ponzini & Spencer (97 NY2d 95 [2001]). The standard applicable for an extension in this case is the "good cause" standard. The plaintiff has demonstrated diligent efforts in attempting service and, indeed, the court has determined that good service was accomplished. Nevertheless, should the plaintiff wish to attempt service on Fell yet again in order to obviate any possible objection, the court finds that plaintiff has demonstrated good cause for an extension of time in which to serve Fell. (See Greco v Renegades, Inc., 307 AD2d 711 [4th Dept 2003] [additional time granted because of difficulty of serving someone in the military].) Additional timeand expedient service by e-mailwas granted because of the problems involved in serving a litigant in a foreign country in Hollow v Hollow (193 Misc 2d 691 [Sup Ct, Oswego County 2002]).
Memorandum of the Office of Court Administration No. 97-67R (1997 NY Legis Ann, at 318-319), in support of the amendment to section 306-b providing for extensions of time, cited the difficulty of serving defendants in other countries as one of the situations in which there might be "good cause" for an extension of time to serve pursuant to the statute.
In Kleeman v Rheingold (81 NY2d 270 [1993]) the Court of Appeals held that a lawyer had a nondelegable duty to see to the proper delivery of process, and a process server's failure was thus {**3 Misc 3d at 236}properly visited on the lawyer. The nature of the attorney's duty when orchestrating service under the Hague Convention is necessarily different. In situations involving service under the Hague Convention the treaty mandates the delegation of the duty and actuality of service to a foreign sovereign over whom the litigant, definitionally, has absolutely no control. All that an attorney can do regarding service pursuant to the Hague Convention is follow the proper procedures to cast his client on the tender mercies of a foreign sovereign which may or may not have much interest in effecting the involvement of its citizens in litigation in the United States. Once the papers have been successfully delivered to the sovereign, the domestic litigant's counsel has done all she can, and if additional monthsor yearsare required to let the sovereign work his will, so be it, and courts should routinely correspondingly extend the time provided to complete the task of achieving proper service under the Hague Convention. (See, in accord, Broad v Mannesmann Anlagenbau, AG., 141 Wash 2d 670, 10 P3d 371 [Sup Ct 2000].) The only nondelegable duty the lawyer has in this situation is to monitor compliance with the Convention and to request, where required, extensions of the time to effectuate service.
The court thus grants this motion in the alternative and the plaintiffs may opt either to deliver the summons and complaint to the Central Authority of the United Kingdom (as defined in the Convention) within 90 days of the order herein, and then file proof of service within 30 days of receipt thereof from the central authority, or rest upon the good service found by this court.

Footnotes

Footnote *: It is uncontested and incontestable that the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (20 UST 361, TIAS No. 6638 [1969]) governs service of process on Fell.